Richard Lee SABBY, Respondent,

v.

COPASAN, INC., d/b/a Plunkett's Pest Control and National Union Fire Insurance Co., Crawford & Company, Administrator, Relators.

Wilhelm THORSVIG, Respondent,

v.

ST. ANSGAR HOSPITAL and St. Paul Insurance Company, Relators.

Nos. C0–90–1795, C6–90–1817.

Supreme Court of Minnesota.

Nov. 21, 1990.

Steven A. Muenzer, Bloomington, for St. Ansgar Hosp. and St. Paul Ins. Co.

Arlen R. Logren, Castor, Klukas, Scherer & Logren, Chtd., Minneapolis, for Copasan, Inc., et al.

Steven C. Schneider, Fargo, N.D., for Wilhelm Thorsvig.

David C. Wulff, LeVander, Zotaley, Vander Linden & Rydland, Minneapolis, for Richard Sabby.

TOMLJANOVICH, Justice.

Certiorari was granted to review two decisions of the Workers' Compensation Court of Appeals affirming awards of benefits under Minn.Stat. § 176.101, subd. 3j. We have consolidated the writs in these two cases for purposes of reviewing the identical issue.

Sabby sustained a work-related injury in July 1985 while working for Copasan, Inc., and Thorsvig sustained a work-related injury in January 1986 while working for St. Ansgar Hospital. Sabby and Thorsvig each received temporary total benefits, each returned to work within 90 days of maximum medical improvement, and each received impairment compensation pursuant to Minn.Stat. § 176.101, subd. 3e.[1]

---

1. Minn.Stat. § 176.101, subd. 3e (1985) reads, in relevant part, as follows:

    **Subd. 3e. End of temporary total compensation.** (a) Ninety days after an employee has reached maximum medical improvement or 90 days after the end of an approved retraining program, whichever is later, the employee's temporary total compensation shall cease. This cessation shall occur at an earlier date if otherwise provided by this chapter.

    (b) If at any time prior to the end of the 90-day period described in clause (a) the employee retires or the employer furnishes work to the employee that is consistent with an approved plan of rehabilitation and meets the requirements of section 176.102, subdivision 1, or, if no plan has been approved, that the employee can do in his or her physical condition and that job produces an economic status as close as possible to that the employee

Sometime beyond 90 days after their respective dates of maximum medical improvement, Sabby and Thorsvig became medically unable to continue working because of their work injuries. In each case, the compensation judge awarded temporary total benefits for the new period of temporary total disability pursuant to Minn.Stat. § 176.101, subd. 3j.[2] In each case, the Workers' Compensation Court of Appeals affirmed on appeal.

In both cases, the employers and their workers' compensation liability insurers take the position that once maximum medical improvement has been attained, an injured employee has no right to receive further limited wage loss benefits even though that employee subsequently becomes totally unable to work as a result of the injury. The employers and their insurers contend that subdivision 3j of section 176.101 applies only to an injured employee who starts working at a "3e" job and, sometime before the expiration of the "post-maximum medical improvement" time frame described in subdivision 3e of section 176.101, becomes medically unable to continue at that job. We disagree. In reading subdivision 3j together with subdivision 3e, we believe the compensation judges and the Workers' Compensation Court of Appeals appropriately concluded that section 176.-101, subd. 3j applies to employees such as Sabby and Thorsvig who return to "3e"

jobs within 90 days of maximum medical improvement and who, sometime beyond 90 days after maximum medical improvement, become medically unable to continue working because of the work injury.

Affirmed.

Employees are each awarded $400 in attorney fees.

YETKA, J., took no part.

---

would have enjoyed without the disability, or the employer procures this employment with another employer or the employee accepts this job with another employer, temporary total compensation shall cease and the employee shall, if appropriate, receive impairment compensation pursuant to subdivision 3b. This impairment compensation is in lieu of economic recovery compensation under subdivision 3a, and the employee shall not receive both economic recovery compensation and impairment compensation. Temporary total compensation and impairment compensation shall not be paid concurrently. Once temporary total compensation ceases no further temporary total compensation is payable except as specifically provided by this section.

2. Minn.Stat. § 176.101, subd. 3j (1984) provides:

   **Subd. 3j. Medically unable to continue work.** (a) If the employee has started the job offered under subdivision 3e and is medically unable to continue at that job because of the

injury, that employee shall receive temporary total compensation pursuant to clause (b). In addition, the employer who was the employer at the time of the injury shall provide rehabilitation consultation by a qualified rehabilitation consultant. Further rehabilitation, if deemed appropriate, is governed by section 176.102.

   (b) Temporary total compensation shall be paid for up to 90 days after the employee has reached maximum medical improvement or 90 days after the end of an approved retraining plan, whichever is later. The temporary total compensation shall cease at any time within the 90–day period that the employee begins work meeting the requirements of subdivision 3e or 3f. If no job is offered to the employee by the end of this 90–day period, the employee shall receive economic recovery compensation pursuant to this section but reduced by the impairment compensation previously received by the employee for the same disability.